All right here we're going to move right into United States v. Speed and Mr. Roots we'd be happy to hear from you remotely sir. All right well thank you your honors. May I please this honorable court my name is Roger Roots I represent the appellant Mr. Hatchet Speed and I would especially like to thank the court for allowing me to present this argument by remote connection I'm two time zones away and I very much appreciate it thank you. Mr. Speed of course was wrongly convicted of possessing three so-called quote-unquote firearm silencers which were not firearm silencers in fact these actually these these devices were purchased absolutely lawfully at the time of course we recognize that the US government later moved against the manufacturer civilly and took those off the market but Mr. Speed simply purchased products that are solvent traps or gun cleaning drip containers essentially and these devices were in his in the original packaging and plainly marked solvent traps and yet the government pursued this case as a firearm silencer possession case and I would say in some ways that the trial was fundamentally unfair just in so many ways we stand on all the arguments we've made on in all of our briefs but I'd like to just focus on the unfairness of the trial just on the basis of the law evidence in some ways it was it was despicable the government essentially basically let the jury hear all these horrific you know statements that had been secretly recorded by a false friend and undercover FBI agent who was wearing a wire while he using leading questions he got mr. speed to make all kinds of you know odd statements about the future civil war collapse and the war between Jews and Christians and and after some leading questions this undercover FBI agent asked well is that the purpose of these these solvent traps and he I think speed responded yeah something like that and and yet the so the jury was I think you know all of us are human beings we are likely to convict someone who expresses horrific you know ideas just on that basis alone so the trial was poisoned and and the jury was fundamentally deceived because it was not his true state of mind and the district judge excluded from the jury the evidence that proved mr. speeds innocence that proved mr. speeds state of mind wrongly calling that evidence for a mistake of law evidence and suggesting that mistake of law evidence was somehow improper and of course in specific intent crimes mistake of law evidence is absolutely a proper defense mr. speed had told it the same undercover FBI agent quote once you a hole in the end of these solvent trap containers without filling out the form one that makes you a felon you're a felon okay so the judge ruled with the government that that is that that was a mistake of law evidence and that that was not allowed of course according to a long line of cases for specific intent crime a mistake of law is a valid defense and I go back to the language of the statute of course this is this crime is you know it is described in two different titles of the US code it's relevant relevantly complicated but the definition is of a firearm silencer is either a device for silencing or muffling the report of a firearm or a combination of parts intended for use in assembling a silencer so that phrase intended for use makes this crime this allegation a specific intent crime and mistake of law is plainly a defense and and mr. speed was robbed the jury was robbed of hearing the actual evidence of mr. speeds innocence and instead the district court pretty much instructed the jury that it was almost as a strict liability offense that that mere possession of these objects was almost strict liability and then and then to shoehorn this this horrific the this undercover recordings of him talking about the Jews and the Christians and post-apocalyptic Armageddon or whatever in the future which was absolutely conditional and and irrelevant in most ways and using that against him to poison the jury if this was just an improper conviction I I would say that these devices the way mr. speed was convicted of possessing these three containers is not just a first impression in this court it's a first impression in the United States as far as I can tell no one in America has ever been convicted of possessing objects that could be categorized as a combination of parts intended for use in assembling a silencer where it would require actual drilling actual modification and alteration not just assembly and so I would say just the plain language of the statute did not apply the statute that plainly did not apply to things that need drilling or altering or modific modification of this time council do you think it would have been just council do you think it had been different if it had been like a snap so in other words if it hadn't required a drill but there just was a screw that was screwed into the you know that the location where the bullet would come out one might say but instead of having it marked for a drill they're just excuse me there was a screw they could be undone with your with your fingers would that would that mean that it is because that would require modification that would preclude such a conviction as well I think your argument is yes but I just want to make sure I understand let me think about that I would have to say that would fundamentally change the question I just think I think the answer is still false because it would require modification but there you would actually have the parts that could could be you know assembled or clipped together or whatever in mr. speed's case he didn't even possess a drill press didn't had never had never altered anything like this hadn't in fact he had a record of 100% total compliance with the strict requirements of the National Firearms Act he had a record of purchasing lawfully registered silencers you know so so in this case he didn't he not only did he not have the drill but he said something like well in the event of this civil war or whatever the entirely conditional post-apocalyptic you might say ramblings in confidence in total privacy to a friend albeit it turned out to be a false friend you know he didn't even have the out he didn't have many of the components that would be needed he never they never found a drill a drill press a drill bit by the way which is not a normal drill bit that you could buy normally in a you know the drill kit it would be a hardened steel drill bit an Allen wrench he didn't had never seen it done no discussion of ever intending to immediately do it it was just this contemplation of a future societal collapse and you know in response to a leading question he said yeah oh yeah well I mean this is it's just so remarkable that this is that we're here on appeal to me it to me that just the insufficiency of the evidence alone requires reversal here can you at least for a moment counsel at least for a moment I understand you want to talk about the evidentiary challenges but will you at least address for a moment the Second Amendment argument and help me understand why you think a silencer is a component that falls within the definition of arms there are lots of questions that follow that but that's sort of the predicate question before we really get to talk a whole lot about the Second Amendment why is it that you think a silencer is such a component that qualifies as an arm as opposed to something that does not qualify as an arm well I argue these were not arms but if they are arms they are protected under the Second Amendment the Bruin court was very was very very broad really in the in the in the wake of Bruin and in Heller and these other cases there the the US government has been essentially arguing that well those courts just said that all prior federal gun control laws are constitutional because they've been on the books for a period of time you know 20 years or more and that is not what what the Supreme Court said in Bruin the firearm is perfectly operable and it without a silencer on the silencer is almost by way of attachment is it not it's an it's an accessory but the firearm itself is perfectly operable without the the without the silencer sure but I mean you think about other things off a holster magazine clips all those things are accessories you know those are part of arms those would fall under the category of arms so your position I take it counsel is that it need not be strictly necessary to the firearms operation in order for it to be a component that is protected by the Second Amendment sure absolutely yes I mean it clearly it's difficult to imagine a hunter or anyone possessing arms going out into the field who doesn't also have lots of accessories that really are part of the operational you know so-called bearing of those are and I take you as the Second Amendment talks about so do you think like a magazine is an example obviously a firearm can be used without a magazine you know you could put a round in the chamber without any magazine and it would operate as a firearm and so it's not necessary to the use of any firearm but yet we would naturally think that a magazine is a component of an arm and is therefore protected as an arm yeah there's a wide variety of such thing I mean also could you just you know excuse me I missed rather than just say what is or what is not an arm can you give me what your definition of what we should consider an arm you know we've been talking about that is it necessary is it essential is an attachment as accessory what's the that we should look at and apply to this particular product if we think it's a silencer well I think the definition of a firearm or an arm accessory would be any anything that is used by by the possessor to augment or help him use the arm and of course we all know from from all kinds of extensive data that hearing problems are part and parcel of firearms. The silencer by itself by itself is a bearable arm isn't the question before us is a magazine by itself a bearable arm or is it is a silencer just considered in isolation a bearable arm or in order to reach the question of a bearable arm under the Second Amendment do we need to consider the arm and all the attachments as a as a as a comprehensive unit or is the unit of to consider for a bearable arm simply the silencer by itself or the magazine by itself or do we consider only in terms of a bearable arm the silencer together with the rifle and or the firearm and everything else do we sort of consider the attachments in isolation or do we say that if the if the government is prosecuting someone before for a possession of arms type of a criminal charge based on for example possession of ammunition think about bulletless think about a stand you know think about stock extension things like this. How could a silencer by itself be a bearable arm? Well it would be it would be just like a stand that someone could be operable without the silencer. How does the silencer by itself become a bearable arm? If well if something is if something is operable without the silencer then how does that become how does the silencer become a bearable arm when it is not necessary to in order to have the the arm operable the firearm. Well a silencer in my mind is no different than a sling or a holster of course none of those are necessary but those are things that are. What about a firing pin? A firing pin is not necessary to the operation of an arm you can create a firearm without a firing pin so do you think that the government can outlaw firing pins because there's another way that you can create a firearm? Again I argue these are not these are not arms but if the government calls them arms then there is the broad umbrella of protection of the Second Amendment because all of these things that we're talking about intent to protect the the the bearing of arms in America and and so clearly a silencer is something that helps users. We know that problems are major issues especially among veterans and so silencer certainly would fall into the category of of things that help firearm users. All right thank you sir and let's hear from the government on this point and others. Good morning your honors. Thank you sir. Good morning your honors. Brian Samuels for the United States. May it please the court. Your honors I'd like to first turn to this sufficiency argument that the defendant raises and I would submit to the court that overwhelming evidence submitted supported the defendant's convictions for these possessions of three unregistered silencers. No matter what they were masquerading as when they were sold as solvent traps these devices were silencers and the jury appropriately found that and looking at the sufficiency question there were really only two elements that bring to bear on this. There's four elements altogether that the defendant possessed the devices there was no issue there. Second that the device was a silencer under the law and as we've just heard the defendant argues that a solvent trap is not a silencer but again no matter what name was put on it these were silencers. Under the plain language of the statute and this is 921 A25 a silencer is any device for silencing, muffling, or diminishing the report of a portable firearm including any combination of parts designed or redesigned and intended for use in assembling or fabricating a firearm silencer or firearm muffler. There isn't a third test that looks at just a unique part that is used solely for fabricating or assembling a silencer. The government did not proceed on that third test but we did on the first two and the significance of that language is that it uses the language for a device for silencing. I think you've covered that all very ably in your brief. I'm kind of interested in the Second Amendment arguments and we're still dealing with what Judge Richardson rightly posed as a threshold question here and the question is when does something become a bearable arm and what and by saying this is a bearable arm or do we open ourselves up to the fact that any attachment that is made to a firearm that makes it and it could make it infinitely more dangerous is all is all part of one bearable arm and are we not opening ourselves up? I mean the danger on the other side is that even my new adjustments to arms would not count but what concerns me about saying the silencer makes this the bearable arm we are saying that any attachment even to an operable firearm even to something that shoots and does what we expect firearms to do that any attachment as far as I know in the future there will be any number given the pace of technology there will be any number of attachments which would be which would make a firearm infinitely more dangerous in this case it makes it substantial makes the firearm substantially more dangerous because the silencer is critical to evading detection by law enforcement as you can't locate the direction or whatever from which that the shot was lethal shot was was was fired and so I don't see the limiting principle here if we say that every attachment to an otherwise operable firearm thereby becomes bearable arms that you see what I'm saying what does this hold for the future? I do your honor and as I start to answer that let me first acknowledge that I know this court has ruled in an unpublished opinion one year ago today I believe and I believe Judge Wilkinson you were on that panel in the Salim case that a silencer does not constitute a bearable arm as the court knows the government has taken the position in a supplemental brief that silencers do constitute bearable arms and in taking that position what we've looked at are that silencers are closely related to the exercise of the rights under the Second Amendment that they are a firearm accessory that's useful to the exercise of that right and that certainly I'll acknowledge Judge Wilkinson that there can be dangerous misuses of silencers but there can also be benefits to those silencers it can reduce the noise of a firearm it can reduce recoil and law enforcement and military that's hardly what was what was at stake here I mean I realized that the armed services use those from the Marines use of silencers because they don't they want to eliminate hearing difficulties that tend to the discharge of firearms but I mean as a practical matter really here we're not talking about people that are using silencers in order to mitigate hearing difficulties we're talking about people who are using silencers to evade law enforcement and why do we why do we think that is there record evidence that most firearms are used to evade law enforcement as opposed to avoid hearing loss or veterans who are involved in hunting there any evidence in any record that suggests that most firearms are used illegally no your honor there's not and we have not put forward the position that even most silencers are used illegally what we've done is we've acknowledged that silencers can be misused and that it can be the basis for some restrictions on a handgun can be misused as well right yes your honor of course our point in arguing that silencers fit within the confines of bearable arms protected by the Second Amendment are that silencers do have benefits that demonstrate that they facilitate the right to keep and bear arms so that's the that's the test you would have us apply whether we're talking about here silencers or magazines or grips or bipod stands or recoil pads or any number of products that can be used with firearms is whether it facilitate I think your word was whether it facilitates yes yes you're on yesterday's problem sort of a bundle there but closely related to the exercise of the right useful to the exercise of that right and a situation where the benefits of it would outweigh any any dangerous use would acknowledge that silencers are not essential at last what's the last part of your test the benefits outweigh the dangerous uses where they demonstrate that they facilitate the right to keep and bear arms where silencers do have a benefit I understood that part I thought you continued and had us do a balancing of the benefits versus the potentially dangerous uses are you suggesting we do that I'm not your honor I'm suggesting is that when determining that silencers fit under the Second Amendment as part of our calculus you asking us to do is to jump into a calculation of cost versus benefits that seems an odd exercise for a court to be undertaking and the you're asking us to rule I mean I think we're being asked to a federal statute I know you for sustaining the federal statute I suppose but I am just a little bit reluctant to I wonder why these kinds of things just can't be determined democratically as this one was by the Congress of the United States and why the why the bird why the calculus and the balance between the benefits and the burdens of attachments to firearms why the utility of that needs to be determined by a court as opposed to the Congress of the United States as they've done in this particular instance with the statute in 5861 D but why isn't this a democratic issue rather than us sitting up here with limited knowledge of what the benefits might of the attachment might be and what the detriment might be where in the world does does Congress's judgment fit in it would seem to me that Congress's judgment should be well nigh conclusive in something that is a that where the alternative is some kind of cost-benefit analysis from limited perspective and knowledge from the bench well your honor let me let me be clear and I don't know that I finished answering judge qual bombs question but if I straight into cost-benefit I did not mean to my argument was the benefits of silencers demonstrate that they are associated with the right under the Second Amendment just looking at the benefits and utility and you do agree that there's a if it is an arm the question of whether it is a dangerous and unusual one right which is has an aspect of its you know potential dangers is a potential argument that can be made the government can regulate certain dangerous and unusual arms but that's downstream of the question that we have that we're talking about right now it is and I'm not arguing that it's dangerous unusual arm we're just arguing as to whether or not silencers fit within the text of the Second Amendment and they fit in the coverage there to answer your question judge Wilkinson certainly Congress can weigh in on the legality of possessing these devices without going through the proper registration and taxing requirements that's what Congress has done in 5861 and this may be just a not just this is a claim about registration yes but if it's not an arm it could be banned so someone could it may seem in this particular case you could argue as kind of maybe innocuous or more innocuous than other situations but the the consequence of saying it's not a bomb arm if we were to do so would mean that this particular product and maybe depending on our definition others cannot just be registered but could be banned correct I think that's correct your honor our argument proceeds from the assumption that it is an arm and then what are the restrictions on are following up on that I mean judge Richardson points out that the law that downstream would allow for the analysis of whether it's unreasonable or dangerous isn't the way Bruin reads that's kind of either or depending on whether it's commonly used for lawful purposes in other words if you have these products that you know may as you may increase the danger let's say if they're commonly used for lawful purposes aren't they definitionally not unreasonably dangerous what yes your honor I think that's all part of the first step in the analysis of Bruin and then once we get past that stuff then we get to the in the fourth circuit yes yes then we get to the restrictions themselves and whether or not those restrictions are an unreasonable burden and and looking at the restrictions that we have in this case the restrictions are shall issue so it's a presumption of constitutionality based on this court's rulings in the Maryland shall issue case that was done last year based on the registration and the taxing requirements and then even if we get past that to the second step of Bruin and we do look at whether or not there are historical analogs to these type of restrictions and as we've set forth in our brief there are there are certain historical analogs that go to or the registration and record-keeping which ones did I recall you identifying if I'm correct the the 1600 registration of all goods that were to come into the colony of Virginia is that right we did your honor you did you identify any founding era restrictions beyond that your honor I think we identified a restriction from the 17th century in Connecticut that bans selling firearms outside of the colony so I believe that was another one that we identified and then also a 1652 New York law that outlawed the illegal trading of guns and powder so there were a number of restrictions of course none of these are dealing with silencers which weren't in play or intervention back then but they were analogous type of restrictions to what we have here why isn't the historical tradition one of many instances a complete man shortly you know this is your your prior brief and I realized that the government has changed his position here and you have every right to do that yes I don't I don't question that it happens with some frequency it's a perfectly fine thing to do but we of course still have the ability to find some merit possible merit in the prior position I certainly understand you're and so we're all trying to think about whether this is comfortably within the historical tradition and I'm just saying I'm wondering why the historical tradition couldn't be defined as in terms of the state bans of silencers that followed rather closely upon their introduction and your your prior brief pointed out that the states like Maine and New to impose total vans now why is it why could we not frame the historical tradition in those terms because when we get into what's a modest burden and what isn't a modest burden once again is this as in the previous question injecting into a policy debate about what's modest and what is immodest and I'm inclined to agree with you that this is a modest burden but I'm just a little nervous about whether we should be doing have all these judicial declarations of modesty when we can look to this same historical tradition it doesn't it doesn't we all agree that bird that Bruno requires us to look at the historical tradition but the historical tradition has been one it seems to me of a complete ban well that's true your honor there's history I guess and there's history we're looking at the history that goes back to the family why is your history better than this other history because we're looking at the history that was in place at the time that the Second Amendment was enacted which is why we're going back to that your honor as any court ever looked at the history from the 20th century to identify the meaning of the Second Amendment I mean is any is any court done that is the Supreme Court ever suggested that the 20th century history is what controls the meaning of the Second Amendment in this context your honor I'm not aware of that not to say that that's not been the case but I'm not aware of it here if I can make this all I can say is that the only history we have is is what happened after the introduction of silencers I don't know that it's a very irrelevant history to take events that happened before silencers and it seems to me why isn't the most relevant history the response of the states after the introduction of silencers and I think one answer that your honor is because what we're looking for is not necessarily a historical twin we're not going to find that here because we didn't have silencers back then but if we're looking at historical analogs we can look back and we can see restrictions that are similar but if I could just say and maybe make this a little bit clearer and easier on my part because this is a shall issue regime this should enjoy a presumption of constitutionality there's been no determination that there's any abusive ends associated with these regulations can I understand that point I appreciate you making it I'm sorry to do this but we're getting near the end of your time yes sir I want to go back to the trial yes sir have you respond to the exclusion of mr. speeds comment on the on the recording that if you something to the fact that you're a felon once you drill the hole yes your mom if you could address what's the government's position on that your honor the government's position is that the district court did not abuse its discretion in excluding that one line from the transcript and the reason that was excluded is because that line went to mr. speeds mistaken belief that a silencer had to be operable to fit under the legal definition of a silencer and it had to be registered and those are not relevant considerations because a silencer does not have to be operable the knowledge element goes to the defendant understanding the features of the device that bring it within the law so it's more more in the line you're not in a ray he but in the staples type of situation that's exactly right your honor the defendant was certainly free to argue and he did that he bought these as solvent traps that he thought they were solvent traps that he intended to use them as solvent traps and he believed he had these features it was when an argument that that the if admitted I guess I guess this yeah this I mean one could look at that statement is actually helpful to the government it seems to me as evidence that the defendant you knew the purpose and this showed a way to evade you know the the regulations I see my time is expired judge will it's a man thank you judge I do think there's an inculpatory aspect to that statement where the defendant acknowledges that he knows that silencers have to be registered the defendant was just mistaken in thinking that a silencer had to be operable to fit within the legal definition it does not the plain language of the statute indicates that supporting case law indicates that defendant just had to know the features of them and the evidence in this case was overwhelming that he certainly did I see my time has expired unless the court has any other questions thank you so very much thank you very much we'd like to hear mr. roots and rebuttal yes thank you your honors so I agree with much of what my opposing counsel said regarding the Second Amendment however you know they're also making the argument that this registration scheme somehow complies with the Second Amendment have to take issue with that under the Bruin decision the Bruin decision talked about ubiquity of use and that Stephen Holbrook law review article that we cited in our first brief I I believe that that Stephen Holbrook law review article said that there are 1 million 1 million lawfully registered silencers currently owned by the American people right now in the United States so it's this is a ubiquitous use these are these are items and accessories that people use with firearms council there might be a I don't know if you if the technology is working if you could please um yeah the the government talked about the presumption of constitutionality for shall issue regulations I'm not seeing much that you've done to rebut that presumption what's your position about how that presumption of constitutionality it has been rebutted in this case well the Bruin decision talked about the Second Amendment and in articulation that interferes with the rights of the normal ubiquitous use that Americans use so Bruin certain Bruin and and Heller certainly never held that all prior written gun control laws ever written by Congress are presumed constitutional or are constitutional under the Second Amendment rather if you really look at the discussion in Bruin they talked about how it really is an analysis of what is the American people's normal use and again over 1 million Americans own lofted this evidentiary thing because there was just although the counselor said there was over overwhelming evidence that simply is not true in fact this required a retrial first trial ended with a hung a hung jury talked about one line being excluded from the transcript the line where mr. speed expressed his innocence the line where he said well I would never convert these into silencers because I would make anyone who did so would be a felon if they did so without properly registering this goes to the knowledge of the device the knowledge that mr. speed had the totality of awareness that mr. speed had of these drip containers so I'd go the judge wrongly excluded the evidence that his knowledge of the devices was an innocent state of mind and that he had no intention of ever converting these into silencers the only thing was this preposterous discussion of a future civil war or something that might be where all bets are off or something like that so it doesn't even satisfy the plain language of the statute which which is for any combination of parts intended for it doesn't even require it doesn't even meet that standard so mr. speed is just plainly innocent and he's been wrongly convicted of these of these charges all right we thank you mr. roots we appreciate very much your your argument we'll come down and take a brief recess and then come down and greet counsel okay I thank you I thank you so much your honor
judges: J. Harvie Wilkinson III, Julius N. Richardson, A. Marvin Quattlebaum Jr.